**MICROSTRATEGY INCORPORATED,**
**Plaintiff–Appellant,**

v.

**MOTOROLA, INCORPORATED,**
**Defendant–Appellee.**

No. 01–1289.

United States Court of Appeals,
Fourth Circuit.

Argued March 15, 2001.

Decided March 28, 2001.

**ARGUED:** Carter G. Phillips, Sidley & Austin, Washington, DC, for Appellant.

Edward W. Warren, Kirkland & Ellis, Washington, DC, for Appellee.

**ON BRIEF:** Daniel Meron, Amanda L. Tyler, Benjamin Gruenstein, Sidley & Austin, Washington, DC; Jonathan Klein, Microstrategy, Incorporated, Vienna, VA, for Appellant. C. Torrance Armstrong, McGuire Woods, L.L.P., McLean, VA; Brian D. Sieve, Kirkland & Ellis, Jerome Gilson, Brinks, Hofer, Gilson & Lione, Chicago, IL, for Appellee.

Before NIEMEYER, DIANA GRIBBON MOTZ, and GREGORY, Circuit Judges.

DIANA GRIBBON MOTZ, Circuit Judge:

In this interlocutory appeal, we agreed to review on an expedited basis the denial of a preliminary injunction to MicroStrategy, Incorporated, which seeks to enjoin Motorola, Incorporated, from use of a purported MicroStrategy trademark. For the reasons that follow, we affirm.

## I.

Motorola, a global communications and electronics company, produces electronic hardware. In June 2000, Motorola held a business summit of its marketing officers to determine how to market more effectively its services and products on a worldwide basis. The company decided to develop a new brand, which would cut across its various business interests, to establish

a more cohesive corporate identity. In early July, Motorola contacted three advertising agencies, inviting each to compete in creating this new brand. The company met with all three agencies during the week of August 7, 2000. One agency, Ogilvey & Mather, suggested the use of "Intelligence Everywhere" as a trademark and global brand for Motorola products. Ogilvey & Mather also represented that its attorneys had conducted a trademark search for "Intelligence Everywhere," which revealed no conflicting use of the phrase as a trademark.

Motorola selected Ogilvey & Mather as its agency and began its normal procedures for clearing "Intelligence Everywhere" as a trademark. In-house trademark counsel for Motorola performed and commissioned various trademark searches for "Intelligence Everywhere" and turned up no conflicting trademark uses of the phrase. On October 5, 2000, in-house counsel informed Motorola management that no conflicting marks had been found and that the phrase was available for use as a mark in the United States and throughout the world. However, in-house counsel also informed Motorola management that a Canadian company, Cel Corporation, had registered the domain name "intelligenceeverywhere.com" and further investigation revealed that Cel might be using the name as a trademark on some products. A month later, Motorola obtained Cel's rights to "Intelligence Everywhere."

On October 19, 2000, Motorola filed an intent-to-use application with the United States Patent and Trademark Office for the registration of the trademark "Intelligence Everywhere," indicating its intent to use this mark on a vast array of its products and services. On December 10, 2000, Motorola registered the domain name "intelligenceeverywhere.com" with Network Solutions, Inc. in Herndon, Virginia.

On January 8, 2001, MicroStrategy,[1] a producer of communication software, notified Motorola that MicroStrategy had been using "Intelligence Everywhere" as a trademark since "at least as early as 1998." A. 461. MicroStrategy further stated that the mark had obtained common law protection, and that Motorola's intended use of the mark would constitute unlawful infringement. Motorola responded by expressing its belief that its use of the mark would not violate state or federal law and its intent to continue using the mark. MicroStrategy then submitted its own application to the United States Patent and Trademark Office seeking to register the trademark, "Intelligence Everywhere."

On February 13, 2001, MicroStrategy filed this action in the United States District Court for the Eastern District of Virginia, raising claims of trademark infringement, trademark dilution, and cybersquatting. MicroStrategy moved the court for a preliminary injunction to prevent Motorola's intended use of the mark. Such an injunction would have prevented Motorola from launching its planned global advertising campaign around the "Intelligence Everywhere" mark, otherwise scheduled to begin the week of March 19, 2001. On February 23, 2001, the district court heard oral argument and denied the motion for a preliminary injunction, explaining its rationale from the bench; the court issued a written opinion five days later, on February 28, 2001.

After noting an interlocutory appeal on its trademark infringement claim, MicroS-

1. Although not as large as Motorola, MicroStrategy employs 2,000 people and has approximately $225 million in annual sales.

trategy then moved this court for expedited consideration of that appeal.[2] We granted the request and, after receiving briefs from the parties, heard oral argument on the matter on March 15, 2001. Immediately following argument, we issued a written order, which affirmed the district court's judgment denying the injunction. We explain here our reasons for that order.

## II.

We review the grant or denial of a preliminary injunction for abuse of discretion, recognizing that "preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir.1991) (internal quotation marks omitted).

As the district court noted, in order to obtain a preliminary injunction a plaintiff must satisfy the familiar four-factor test established in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir.1977). A court must consider (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the request is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *Id.* at 195–97; *Direx*, 952 F.2d at 812.

"[T]he first step ... is for the court to balance the 'likelihood' of irreparable harm to the plaintiff against the 'likelihood' of harm to the defendant; and if a *decided* imbalance of hardship should appear in plaintiff's favor, then ... [i]t will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation." *Blackwelder*, 550 F.2d at 195 (emphasis added). But "if 'the plight of the defendant [is] not substantially different from that of the plaintiffs,' that is, if there is no imbalance of hardship in favor of the plaintiff, then 'the probability of success begins to assume real significance,' and interim relief is more likely to require a clear showing of a likelihood of success." *Direx*, 952 F.2d at 808 (quoting *Blackwelder*, 550 F.2d at 195 n. 3).

In this case, the grant of an injunction would cause at least as much harm to the defendant, Motorola, as its denial would to the plaintiff, MicroStrategy. Indeed, to some extent, the parties' arguments on irreparable harm present two sides of the same coin. Each maintains that it has superior rights to the use of "Intelligence Everywhere" as a trademark and that the grant, or denial, of injunctive relief will cause irreparable harm to its use of the mark. Thus, we can only conclude that a "decided imbalance of hardship" does *not* weigh in MicroStrategy's favor. *Blackwelder*, 550 F.2d at 195. In fact, it well may be that Motorola has demonstrated that it will suffer more from a grant of an injunction than MicroStrategy will from its denial.[3] At the very least, "there is no

---

**2.** MicroStrategy does not appeal the denial of a preliminary injunction with respect to its trademark dilution and cybersquatting claims. Brief of Appellant at 20 n.7.

**3.** Although MicroStrategy makes only the general argument noted in text with respect to irreparable harm, Motorola has offered evidence detailing the particulars of the harm it

would suffer if a preliminary injunction was granted. For example, Motorola has submitted affidavits explaining that it has previewed the "Intelligence Everywhere" mark to its "key customers," and has told those customers that the mark would be the basis of a "joint co-marketing and advertising campaign with Motorola," to be launched the week of March 19, 2001 to coincide with three inter-

imbalance of hardship"; accordingly, we turn to the question of likelihood of success on the merits. *Direx*, 952 F.2d at 808.

■ When, as here, the balance of hardship "does not tilt decidedly in plaintiff's favor" then a plaintiff must demonstrate a "strong showing of likelihood of success" or a "substantial likelihood of success" by "clear and convincing evidence" in order to obtain relief. *Id.* at 818 (internal quotation marks and citations omitted). In trademark cases, a plaintiff's burden may be even greater. As we noted in *Direx*, the foremost trademark authority has stated that "when the hardship balance does not tip 'decidedly' or 'significantly' in favor of the plaintiff," then the plaintiff must prove the " 'probability (not mere possibility)' " of success on the merits; in other words, the plaintiff must have "a very clear and strong case." *Direx*, 952 F.2d at 813 (quoting 2 J. Thomas McCarthy on Trademarks and Unfair Competition § 30.16 (2d ed.1980)). " '[T]o doubt is

to deny' "; thus, "if there is doubt as to the probability of plaintiff's ultimate success on the merits, the preliminary injunction must be denied." *Id.*

■ With this standard in mind, we turn to the question of whether MicroStrategy has demonstrated substantial likelihood of success on the merits in its trademark infringement claim. For a plaintiff to prevail on a claim of trademark infringement, the plaintiff must first and most fundamentally prove that it has a valid and protectable mark. *See Petro Stopping Ctrs. v. James River Petroleum*, 130 F.3d 88, 91 (4th Cir.1997).

The district court held that MicroStrategy had failed to show a likelihood of success on this critical, initial burden. The court reasoned that although the record demonstrated that MicroStrategy had registered approximately 50 marks, it failed to register "Intelligence Everywhere" as a mark and, therefore, did not qualify for protection under 15 U.S.C. § 1114(1) (1994 & Supp. V 1999). With respect to MicroS-

---

national technology trade shows. A. 266. An injunction would assertedly cause Motorola incalculable harm to its "reputation and good will within the industry" and "negatively impact key business ventures." *Id.* Motorola has submitted evidence as to print and television advertisements, new packaging, and website redesign—all featuring the "Intelligence Everywhere" mark—that it has developed for the same mid-March campaign to accompany the three trade shows. A. 264–65. The company has also outlined its financial investment in developing the "Intelligence Everywhere" mark, which as of February 20, 2001 totaled more than $24 million. A. 263–64. Undoubtedly, Motorola incurred some of these expenses after it received notification of MicroStrategy's claim in January 2001, but not even MicroStrategy contends that Motorola had not spent substantial sums on its global campaign prior to any notice from MicroStrategy. Moreover, the record clearly demonstrates that, after conducting an extensive trademark search and carefully evaluating MicroStrategy's claims, Motorola

believed that MicroStrategy had no valid claim to the "Intelligence Everywhere" mark. It seems entirely reasonable for Motorola, considering its significant sunk costs, to continue preparations for its campaign in face of what it viewed as a meritless claim. The dissent's contrary contention, that Motorola acted in bad faith, assumes that MicroStragegy's claim to the mark was not only valid, but *clearly valid;* to adopt this view is to have already adjudicated MicroStrategy's ownership of the mark in its favor. Not only is this an inappropriate starting place, but, as we explain above, an insupportable conclusion. Of course, we make no "contention that 'bad faith' infringement can only be proved" when a mark is "clearly valid," *post* at n.3; rather, we merely suggest that the dissent's contention—that Motorola has acted in bad faith and the balance of harm weighs in MicroStrategy's favor—is based on the insupportable view, given the record at this preliminary stage, that MicroStrategy has proved its asserted mark clearly valid.

trategy's claim under the common law of Virginia, the court concluded that "a careful review" of the record did "not reveal" that MicroStrategy used the term "Intelligence Everywhere" to "identif[y] MicroStrategy as a source of goods or services." A. 51.

 Of course, as MicroStrategy points out, a mark need not be registered to garner federal trademark protection. Rather, "it is common ground that § 43(a) [of the Lanham Act, 15 U.S.C. § 1125 (1994 & Supp. V 1999) ] protects qualifying unregistered trademarks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). But § 43(a) of the Lanham Act, like Virginia common law,[4] does require that in order to obtain trademark protection "a designation must be proven to perform the job of identification: to identify one source and distinguish it from other sources." 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 3:3 (4th ed.2000). "Not every single word [or] phrase ... that appears on a label or in an advertisement qualifies as a protectable mark." *See id.* If a purported mark fails to identify its source, it is not protectable—under state or federal law. *Id.; see also* 15 U.S.C. § 1127 (1994) (" 'trademark' includes any word, name, symbol, or device, or any combination thereof ... used by a person ... to identify and distinguish his or her goods"). As the Sixth Circuit recently put it, "a plaintiff must show that it has actually used the designation at issue *as a trademark*; thus the designation or phrase must be used to 'perform[ ]' the trademark function of identifying the source of the merchandise to the customers." *Rock and Roll Hall of Fame v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998).

After careful examination of the 252 pages of MicroStrategy documents that the company has submitted in support of its motion for preliminary injunction, we agree with the district court: MicroStrategy has failed to demonstrate that it has likely used "Intelligence Everywhere" to identify MicroStrategy as the source of its goods or services.

 MicroStrategy has offered 24 documents (not including duplicates of press releases), dating from March 1999 through early 2001, in which it has used the term "Intelligence Everywhere." These include two annual reports, several press releases, brochures, sales presentations, a product manual, a business card, and newspaper articles. Although most of these documents contain several pages of densely printed material and some are quite lengthy, *see* A. 374 (39 pages), A. 159 (64 pages), A. 413 (30 pages), A. 131 (28 pages), A. 352 (22 pages), and A. 115 (16 pages), typically each refers *only once* to "Intelligence Everywhere," and that reference follows no particular design or sequence, i.e., sometimes its on the cover, sometimes not, most often "Intelligence Everywhere" appears in the midst of text. Use of a trademark to identify goods and services and distinguish them from those of others "does not contemplate that the public will be required or expected to browse through a group of words, or scan an entire page in order to decide that a particular word, separated from its context, may or may not be intended, or may or may not serve to identify the product." *In re Morganroth*, 208 U.S.P.Q. 284, 288, 1980 WL 30167 (T.T.A.B.1980); *Ex parte*

4. Section 43(a) of the Lanham Act "tracks classic principles of state law of unfair competition." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:18 (4th ed.2000); *see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 n. 10 (4th Cir. 1995).

*Nat'l Geog. Soc.,* 83 U.S.P.Q. 260, 1949 WL 3854 (Comm'n Pat.1949). Yet that is precisely the sort of examination one is forced to employ even to find the term "Intelligence Everywhere" in many of MicroStrategy's materials.

■ Moreover, MicroStrategy has not used any "constant pattern" or design to highlight "Intelligence Everywhere." *Cf. Textron Inc. v. Cardinal Eng'g Corp.,* 164 U.S.P.Q. 397, 399, 1969 WL 8396 (T.T.A.B. 1969) (mark found because, "since its inception," it had been used by the company in a "constant pattern"; it was "always set off" in some manner). A trademark need not be "particularly large in size or ... appear in any particular position on the goods, but it must be used in such a manner that its nature and function are readily apparent and recognizable without extended analysis or research and certainly without legal opinion." *In re Morganroth,* 208 U.S.P.Q. at 288, 1980 WL 30167; *See also Ex parte Nat'l Geogr. Soc.,* 83 U.S.P.Q. at 260–61, 1949 WL 3854. Unlike certain MicroStrategy trademarks, e.g., "Intelligent E–Business," MicroStrategy has not consistently placed "Intelligence Everywhere" on a particular part of the page, or in a particular type, or labeled it with "TM," [5] or consistently used a distinctive font, color, typeset or any other method that makes "its nature and function readily apparent and recognizable without extended analysis." *Id.* "[A] designation is not likely to be perceived as a mark of origin unless it is repetitively used, as opposed to only an occasional or isolated use." 1 McCarthy § 3.3.

■ On its business card and elsewhere, MicroStrategy characterizes "Intelligence Everywhere" as the company "mission," *see* A. 224, A. 453, A. 109, A. 162, A. 116, A. 314, A. 450, A. 320, A. 354, A. 386, "vision," *see* A. 327; A. 344, A. 348, A. 443, A. 453, "effort," *see* A. 324, A. 447, "motto" A. 315, or "dream," A. 313. Although in the proper context, a mission statement, like a slogan, can serve as a trademark, a company mission statement or slogan is certainly not by definition a trademark. Rather, mission statements, like "[s]logans *often* appear in such a context that they do not identify and distinguish the source of goods or services. In such cases, they are neither protectable nor registrable as trademarks." *See* 1 McCarthy § 7:20 (emphasis added). So it is here. MicroStrategy has not demonstrated that it has used the mission statement to identify and distinguish the source of its products or services. If anything, the phrase has been used to advertise MicroStrategy's goods, without identifying the source of those goods. Unless used in a context whereby they take on a dual function, advertisements are not trademarks.

Moreover, the record does not bear out MicroStrategy's claim that the company "for years has used the mark consistently in widely distributed sales brochures [and]

---

**5.** Only infrequently has MicroStrategy designated "Intelligence Everywhere" with a TM (just five times in pre–2001 documents, *see* A. 109, A. 116, A. 324 (duplicated at A. 447), A. 327 (duplicated at A. 443 with TM and at A. 348 and A. 344 without TM); A. 354), while it has consistently designated other phrases with the "TM." Moreover, although on eight documents presented to us MicroStrategy has included lists of its trademarks, the company omits "Intelligence Everywhere" from its lists of trademarks about as often as it includes the phrase. *Compare* A. 130, A. 158, A. 325 (duplicated at A. 447) (all listing "Intelligence Everywhere") *with* A. 99, A. 102, A. 221, A. 454 (all omitting "Intelligence Everywhere") *and* A. 329, 346, 350, 445 (duplications of same press release listing phrase on A. 329 but omitting phrase on A. 346 and A. 350 and omitting entire list on A. 445). Notably, although the company lists 18 trademarks in its handsomely printed 64–page 1999 annual report, it does not include "Intelligence Everywhere" among them. *See* A. 221.

product manuals sold with the software, and advertising for its Broadcaster software"; the mark "is commonly placed right next to the name, Broadcaster." Brief of Appellant at 32. The two items that MicroStrategy provides to support this proposition are a Broadcaster product brochure, copyrighted in 2000, and a Broadcaster administrator guide, which indicates it was published in September 1999. Nothing in the record indicates precisely how "widely" these items have been distributed. What is clear is that not even in these two documents did MicroStrategy use "Intelligence Everywhere" "consistently" as a trademark "right next to the name, Broadcaster." For example, in the text-filled three-page Broadcaster product brochure, the phrase "MicroStrategy Broadcaster" appears 19 times, A. 97–99; "Intelligence Everywhere" does not "commonly appear right next to" it, rather "Intelligence Everywhere" appears just once. *See* A. 98. "Microstrategy Broadcaster" appears twice on the cover of the brochure; "Intelligence Everywhere" is nowhere on the cover. A. 97. "Broadcaster," in large letters, heads the top of the second page of the brochure, in much smaller letters "MicroStrategy Broadcaster" is repeated underneath, and next to that, also in the same much smaller print, is "Intelligence Everywhere." A. 99. While "MicroStrategy Broadcaster" is repeated several more times on the page, "Intelligence Everywhere" is not. Moreover, on the last page of the brochure, when MicroStrategy lists its trademarks, including "MicroStrategy Broadcaster"

and fourteen other marks, it does not list "Intelligence Everywhere." A. 99.[6]

What appears to have eluded MicroStrategy is that "[e]ven though a word, name, symbol, device, or a combination of words [a slogan] *may be used* in the sale or advertising of services or on or in connection with goods" it is not protectable as a trademark "unless it *is used* as a mark." *In re Morganroth*, 208 U.S.P.Q. at 287, 1980 WL 30167; *see also In re Int'l Paper Co.*, 142 U.S.P.Q. 503, 505, 1964 WL 8038 (T.T.A.B.1964) (noting that the "question here is not whether a slogan can perform the function of a trademark" but whether it does perform this function, i.e., "identify and distinguish" the owner's goods from those of others). "Intelligence Everywhere" could function as a trademark, but MicroStrategy has not clearly demonstrated that it has, in fact, used the phrase as a mark.

For these reasons, MicroStrategy has at this juncture utterly failed to provide a basis for a court to find the probability of its trademark usage, let alone trademark infringement by Motorola. Rather, MicroStrategy has presented a record of limited, sporadic, and inconsistent use of the phrase "Intelligence Everywhere." Obviously, this does not constitute "a clear and strong case" of likelihood of success on the merits. Of course, MicroStrategy may yet prevail on its infringement claim at trial. But the company has not demonstrated that this is likely, let alone that the district court abused its discretion in refusing to grant the requested preliminary injunc-

**6.** Examination of the excerpt of the administrator guide presented to us reveals a similar story. The excerpt is eight pages; it mentions "MicroStrategy Broadcaster" six times, A. 100–107. Again "Intelligence Everywhere" appears but once. A. 100. That single appearance is on the cover, to be sure, but it is in the smallest print on the cover, more than halfway down the page, not near, let alone "right next to the name Broadcaster," as MicroStrategy claims. Furthermore, again in the administrator guide, MicroStrategy lists its trademarks including "MicroStrategy Broadcaster" and fourteen others, but omits any mention of "Intelligence Everywhere." A. 102.

tion.[7] The judgment of the district court is therefore

*AFFIRMED.*

NIEMEYER, Circuit Judge, dissenting:

To deny MicroStrategy a preliminary injunction at this stage of the proceedings, when no trial has yet been held, ensures that any rights MicroStrategy may have in the mark "Intelligence Everywhere" will be seriously undermined, if not permanently destroyed, by Motorola's planned advertising campaign promoting its *identical* mark in a contiguous, complementary product market. Because the outcome on the nature and scope of MicroStrategy's alleged senior mark is not a foregone conclusion at this time, likelihood of success on the merits is not a determinative factor on the appropriateness of entering a preliminary injunction. But, because the balance of hardships so clearly favors MicroStrategy, the principles of equity suggest that we enter a preliminary injunction to prohibit Motorola's use of its junior mark "Intelligence Everywhere" until a trial can be held to determine whether MicroStrategy has a valid, senior interest in the mark.

The majority, in weighing the first two *Blackwelder*[1] factors—the relative likelihood of irreparable harms to the parties—gives too much weight to Motorola's professed hardships in reaching the conclusion that the balance does "not tilt decidedly in plaintiff's favor." *Supra*, at 340. The majority relies specifically on Motorola's alle-

gations regarding the potential harm it will suffer from an injunction, namely that (1) its reputation and good will in the industry will be harmed because it has previewed the mark to various customers; (2) it will lose its financial investment in print and television advertisements featuring the "Intelligence Everywhere" mark; and (3) its financial investment in developing the mark, which to date exceeds $24 million, will be lost or, at least, adversely impacted. *See id.* at 339 n. 3. But even if these harms are relevant, the evidence shows that their primary cause is *Motorola's* decision to continue its own marketing strategy, even after being put on notice of MicroStrategy's claim in January 2001.

For example, Motorola's Director of Corporate Identity, James Winski, admits that the printing of its annual report—a potential loss in excess of one million dollars—was not scheduled to commence until late February 2001, well over a month after Motorola was first put on notice that MicroStrategy claimed the "Intelligence Everywhere" slogan as its mark.[2] Likewise, Motorola Vice President Sandra West admits in her affidavit that television commercials featuring the "Intelligence Everywhere" mark were scheduled to be shot at the end of February, and thus could have been canceled or postponed. Moreover, although West asserts that Motorola's goodwill and reputation in the industry will be undermined because it has

---

7. Given our resolution of this appeal, we need not, and do not, reach the district court's holding on the likelihood of confusion between MicroStrategy's and Motorola's use of the phrase "Intelligence Everywhere." We do note some skepticism, however, as to the district court's conclusions that "Intelligence Everywhere" is a descriptive mark, that the "MicroStrategy and Motorola marks are not similar," and that MicroStrategy and Motorola "offer different goods and services which serve different unrelated purposes."

1. *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189 (4th Cir.1977).

2. Indeed, the record contains no evidence regarding when Motorola began the design of its annual report to include the "Intelligence Everywhere" mark. It may be that even that decision was made subsequent to its being put on notice of MicroStrategy's claim to the mark.

already made presentations to key customers in which it previewed the trademark and announced a March roll-out date, West does not indicate whether these presentations occurred before or after Motorola was given notice that the planned advertising blitz well might infringe a MicroStrategy trademark. Indeed, it is telling that Motorola's "evidence detailing the particulars" of its potential injuries asserts specific dates for several outlays prior to January, e.g., to Ogilvey & Mather in September 2000 and to the Cel Corporation in November 2000, but then steers carefully away from asserting the dates on which it spent the bulk of the $24 million.

Of course, even without the January notice, these expenditures are irrelevant to MicroStrategy's right to enjoin Motorola's use of the mark. And the majority's error in relying on these expenditures is made all the more glaring by the fact that Motorola's decision to spend money on the planned advertising campaign after it was on notice weighs in favor of *MicroStrategy* because it demonstrates Motorola's bad faith.[3] Thus, these expenditures should have been taken to tip the balance in favor of MicroStrategy rather than against it.

But weighing most heavily in favor of MicroStrategy is the certainty that Motorola's widespread use of the identical mark in a complementary product market will effectively and permanently destroy MicroStrategy's mark if an injunction is not entered. Motorola's resources far exceed those of MicroStrategy's, and Motorola's proposed use of the mark will be nearly universal. Thus, considering only the relative harms, I believe that the harm from *delay* of Motorola's introduction of "Intelligence Everywhere"—a delay that does not necessarily entail the loss of development expenses—is outweighed by the irreparable injury that will occur to MicroStrategy's mark, even if it is able to prevail on the merits.

Even on the merits, MicroStrategy's chances of prevailing at trial are quite good and certainly are nowhere as bleak as the majority suggests. Any doubt about MicroStrategy's eventual success, as the majority observes, would come from questions about how consistently MicroStrategy has been in using the "Intelligence Everywhere" slogan as a trademark. Yet, even as to this, the closest question on the merits, there is a good deal of evidence in the record in MicroStrategy's favor.

**3.** That the district judge and two members of this court have been impressed by the amount spent on a trademark by a potential infringer, a theoretically irrelevant factor, would seem to indicate that companies wishing to escape infringement liability will best be served by heeding the advice of Martin Luther, that if you sin, "sin boldly" (*pecca fortiter*). Letter from Luther to Melanchthon (1521), in *Epistolae* (1556).

The majority's suggestion, albeit ambiguous, that "bad faith" infringement can only be proved in a case where a claim to a mark is "not only valid, but *clearly valid*," supra, at 339 n. 3, is simply an inaccurate statement of what is required to recover profits, actual damages, and attorney fees under 15 U.S.C. § 1117(a). *See Int'l Star Class Yacht Racing*

*Ass'n v. Tommy Hilfiger, U.S.A., Inc.,* 80 F.3d 749, 754 (2d Cir.1996) (discussing the relevance of continued infringement to an assessment of "bad faith" after the infringer was put on notice of the claimed trademark by its being sued for infringement); *cf. Nalpac, Ltd. v. Corning Glass Works,* 784 F.2d 752, 755–56 (6th Cir.1986) (affirming finding of good faith based in part on the infringer's cessation of infringing activities after acquiring knowledge of another's claim to the trademark, but before a final adjudication). However risky, a party can decide to "bet[ ] on the fact that [the claimant] w[ill] not prevail in its suit," but, if it loses that bet, the infringer "should not escape the consequences of its conduct." *Int'l Star Class Yacht Racing Ass'n,* 80 F.3d at 754.

First, while MicroStrategy has not consistently used the mark in all of its corporate documents, the record certainly does reflect that MicroStrategy has used the mark consistently as a trademark *with respect to its "Broadcaster" software.*[4] On the cover of the software user's manual, which is distributed with the software, the mark is set out in prominent, highlighted text. *See generally In re Post Props., Inc.*, 227 U.S.P.Q. 334, 334–35, 1985 WL 71924 (T.T.A.B.1985) (listing distinctive or different print style and prominent position on a label or advertising copy as a common indicator that a word, phrase, or picture is being used as a trademark). Moreover, every MicroStrategy business card features the mark, set off with quotation marks, in initial capital letters, with the TM signal next to it. Either of these consistent uses alone could be enough to establish the adoption of "Intelligence Everywhere" as a mark, and together, they provide MicroStrategy with considerable evidence to present at trial on the first element of its infringement claim.

If it is able to establish this element, MicroStrategy is almost certain to prevail on the other elements of its infringement claim. Despite the district court's contrary conclusion, it cannot seriously be contended that MicroStrategy's use of "Intelligence Everywhere" is descriptive rather than suggestive. The phrase does not impart information about MicroStrategy or its products directly—the hallmark of a descriptive mark—but instead "requires some operation of the imagination to connect" the meaning of the phrase to MicroStrategy and its products, the very definition of a suggestive mark. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir.1984) (quoting *Union Carbide Corp. v. Ever–Ready, Inc.*, 531 F.2d 366, 379 (7th Cir.1976) (internal quotation marks omitted)). A potential customer faced solely with the slogan would be unable to describe precisely what product or services were offered by MicroStrategy, unlike in the cases of marks held to be descriptive, e.g., "After Tan post-tanning lotion, 5 Minute glue, King Size men's clothing, and the Yellow Pages telephone directory." *Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 464 (4th Cir.1996) (citing 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 11.08 (3d ed.1995)).

Further, MicroStrategy should have little difficulty in establishing a "likelihood of confusion" under the Lanham Act in this case. *See id.* at 463 (setting forth the factors considered in the "likelihood of confusion" analysis). We need not discuss each of the factors at length here, because it is simply a matter of common sense that MicroStrategy's "Broadcaster" product—which bears the "Intelligence Everywhere" mark and is sold to customers who not only use Motorola products, but may use them to run "Broadcaster" itself—will become associated by its customers with Motorola after that company's expensive media blitz. *Where senior and junior users of identical marks operate in contiguous product markets that involve complementary products, confusion can almost be presumed.* And in this case, the probability of confusion is enhanced, not lessened, by Motorola's plan to link its hallmark "M" with the "Intelligence Everywhere" slogan. As discussed above, "Broadcaster" customers are likely to be Motorola customers—the targets of the advertising blitz—and thus are inherently likely to begin associating the slogan with Motorola and naturally to assume that MicroStrategy products bearing the slogan are associated with Mo-

---

**4.** The majority irrelevantly cites to non-use in contexts other than "Broadcaster," which says nothing about its adoption of the mark in connection with this specific product.

torola—a classic case of "reverse confusion." *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 228 (3d Cir.2000) ("[R]everse confusion occurs when the junior user saturates the market with a similar trademark and overwhelms the senior user" (citations and internal quotation marks omitted)).

Because the district court applied the controlling legal standards improperly and, in addition, considered irrelevant factors in determining the relative harms to the parties, I would reverse its ruling and remand for entry of a preliminary injunction pending trial. I would also direct the district court to conduct that trial expeditiously so as to minimize any harm that might be caused by further delay. For these reasons, I respectfully dissent.