Joseph Tyler DEVENEY, Plaintiff,

v.

BOARD OF EDUCATION OF THE COUNTY OF KANAWHA, and Dr. Tom Williams, in his official capacity as Principal of St. Albans High School, Defendants.

No. CIV.A. 2:02–0493.

United States District Court, S.D. West Virginia, At Charleston.

Oct. 25, 2002.

Thomas J. Gillooly, Charleston, WV, Ayesha N. Khan, Alex J. Luchenitser, Washington, DC, for Plaintiff.

Jan L. Fox, Steptoe & Johnson, James W. Withrow, Charleston, WV, for Defendants.

*TEMPORARY RESTRAINING ORDER*

COPENHAVER, District Judge.

This matter comes before the court on the motion for temporary restraining order, filed along with the complaint on May 29, 2002, by plaintiff Joseph Tyler Deveney against defendants Kanawha County Board of Education and Dr. Tom Williams (collectively hereinafter "the Board"). The matter was set for hearing on May 30, 2002, at which time counsel for plaintiff, Alex J. Luchenister and Tom Gillooly, and counsel for defendant, James W. Withrow, appeared. Upon consideration of the affidavit of plaintiff, exhibits and testimony offered at the hearing of this matter and the stipulation of facts as presented by counsel, the court finds as follows.

## I. *Factual Background*

The plaintiff, Joseph Tyler Deveney, is an eighteen-year old graduating senior attending St. Albans High School ("St. Albans High"), in St. Albans, West Virginia. Deveney wishes to attend his graduation ceremony scheduled for 7:30 p.m. on May 30, 2002, at the Charleston Civic Center, a facility owned by the City of Charleston. He seeks to enjoin the Board from permitting the inclusion of an invocation at the graduation ceremony. Deveney is an atheist who does not subscribe to the religious beliefs represented by the planned invocation. He is offended by the inclusion of an invocation at his graduation ceremony in that it makes him feel unwelcome. at the school and he also finds it offensive in that he believes it manifests a disrespect for the United States Constitution. Deveney believes that the inclusion of an invocation will force him to choose between attending the graduation ceremony and sitting though the invocation; attending the graduation ceremony and leaving during the invocation; or missing the graduation ceremony in its entirety.

The use of an invocation is formally addressed by an administrative regulation issued by the Superintendent of the Board in 1994. The 1994 regulation states in pertinent part:

49.01 Graduating Senior Class. The use of an invocation at high school graduation exercises shall rest within the discretion of the graduating senior class of each high school.

49.02 Student Volunteers. The invocation, if used, shall be given by a student volunteer.

49.03 Review and Approval of Invocation. If an invocation is to be given by a student volunteer, the text of the invocation shall be submitted to the Principal prior to the graduation ceremony. The principal shall approve the invocation only if it is nonsectarian and nonproselytizing in nature.

The inclusion of an invocation at graduation ceremonies dates back a number of years at St. Albans High School. At some point in the 2001–2002 school year, a school volunteer, Ross Harrison, met with St. Albans senior class officers to address, among other issues pertaining to graduation, whether the officers wished to include an invocation in their graduation program. The senior class officers voted [1] to include the invocation and selected senior class vice president Michael Ervin, a volunteer, to give the invocation.

Pursuant to the Board's policy, Ervin's invocation has been approved in advance by Dr. Tom Williams, the principal of St. Albans High School, who has determined that the planned invocation is nonsectarian and nonproselytizing. The text of the planned invocation is as follows:

Father,

We come before you with total humility. For you are the holy of holys and the maker of all. I want to thank you for working in our lives since the day we were born to this very day. You have brought us through many trials and hard times but have also brought us through to see the light. We have learned so much but yet there is much more for us to learn. I pray that you put your hedge of protection around every member of our class so that maybe we can come back to our hometown to share things we have learned and to once again impact each other with people that we will become. I pray for continued success in our lives along with encouragement, strength, good health,

---

**1.** The senior class officers are elected representatives of the senior class. Thus, the vote of the officers does not necessarily reflect the wishes of each member of the St. Albans senior high school class.

and for us to seek out truth. I want to thank you for the people that you have put in our lives to mold us, like a potter who molds his clay, into the people that we are this very day. You are the reason we are here and everyone needs to acknowledge that. You know our hearts and what needs to be done in them. I pray for your blessing upon us and for your love to be showered continuously upon our generation. Thank you, and I love you, In your name we pray Amen.

## II. *Discussion*

### A. *Standard for Temporary Restraining Order*

A temporary restraining order ("TRO") is an "extraordinary remedy" and should be granted only in limited circumstances. *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir.2001) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir.1991)). Four factors are to be considered in determining whether to grant a motion for temporary restraining order. They are as follows: (1) likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) likelihood of harm to the defendant if the request is granted; (3) likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 193 (4th Cir.1977).

### B. *Legal Authority Governing Invocation at Public School Graduation Ceremonies*

The Supreme Court has twice in recent years addressed the issue of prayer or invocation at public school events. In the case of *Lee v. Weisman*, the Court struck down nonsectarian prayer at a high school graduation ceremony as violative of the Establishment Clause of the United States Constitution.[2] *See* 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). The Court found that school officials, who selected an individual from the community to deliver the invocation and who prepared the requirements for the invocation, exercised an undue amount of control over the content of the religious message, thus entangling church and state in violation of the Establishment Clause.

In a more recent case, the United States Supreme Court struck down a school policy permitting students to vote as to whether a student speaker would deliver an "invocation and/or message" prior to the commencement of school football games. *See Santa Fe Independent School Dist. v. Doe*, 530 U.S. 290, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000). Although the invocation or message was only permitted upon a majority vote of the student body, and, if approved, to be delivered by a student also selected by the student body, the Court rejected the notion that the speech was purely private. *Id.* at 308–310, 120 S.Ct. 2266. The Court reasoned that "[t]he delivery of such a message—over the school's public address system, by a speaker representing the student body, under the supervision of school faculty, and pursuant to a school policy that explicitly and implicitly encourages public prayer—is not properly characterized as "private speech." " *Id.* at 309, 120 S.Ct. 2266. The Court noted that the term "invocation" contained in the policy, as applied in previous years, had traditionally involved messages with religious content. *Id.* at 306–07, 120 S.Ct. 2266. Nor

---

**2.** The United States Constitution provides that "Congress shall make no law respecting the establishment of religion or the free exercise thereof ..." U.S. Const. Amend. I (hereafter the "Establishment Clause"). The Establishment Clause is applicable to the states and local governments through the Fourteenth Amendment.

was the Court persuaded that the inclusion of a student body voting mechanism rendered the invocation policy constitutionally unoffensive, reasoning that "this student election does nothing to protect minority views but rather places the students who hold such views at the mercy of the majority." *Id.* at 305, 120 S.Ct. 2266. Concluding that the school's policy "involves both perceived and actual endorsement of religion" the court struck down the policy as unconstitutional. *Id.* at 305, 120 S.Ct. 2266.

Although the Court of Appeals for the Fifth Circuit in the *Santa Fe* case had addressed invocation at both graduation and at football games, the Supreme Court granted certiorari only on the following issue: "Whether petitioner's policy permitting student-led, student-initiated prayer at football games violates the Establishment Clause." *Santa Fe Independent School District v. Doe,* 528 U.S. 1002, 120 S.Ct. 494, 145 L.Ed.2d 381 (1999). Thus, the Circuit Court's determination that a policy permitting a nonsectarian and nonproselytizing student-delivered invocation or message at graduation was not violative of the Establishment Clause, stood unaffected by the Supreme Court's ruling. *See Doe v. Santa Fe ISD,* 168 F.3d 806, 815–818 (5th Cir.1999).

Following the Supreme Court's ruling in *Lee v. Weisman,* in addition to the Fifth Circuit decision in *Santa Fe* described above, several other United States Circuit Courts have addressed the issue of the constitutional validity of invocation policies at public high school graduation ceremonies. In each case, the Circuit Court has examined the degree of control exercised by the school over the graduation invocation or message. *See Adler v. Duval Cty. School Bd.,* 250 F.3d 1330 (11th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 664, 151 L.Ed.2d 579 (2001); *Cole v. Oroville Union High School District,* 228 F.3d 1092 (9th Cir.2000), *cert. denied,* 532 U.S. 905, 121 S.Ct. 1228, 149 L.Ed.2d 138 (2001); *American Civil Liberties Union of New Jersey v. Black Pike Regional Bd. of Educ.,* 84 F.3d 1471 (3d Cir.1996), *en banc; Jones v. Clear Creek ISD,* 977 F.2d 963 (5th Cir.1992), *cert denied,* 508 U.S. 967, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993). In *Adler,* the most recent of these decisions, an *en banc* panel of the Eleventh Circuit Court of Appeals, following reversal by the Supreme Court and remand of its earlier decision in the same case, again upheld a neutrally worded policy permitting at graduation "a brief opening and/or closing *message,* not to exceed two minutes" given by a student volunteer and with "the content of that *message* not be monitored or otherwise reviewed by Duval County School Board, its officers or employees." *Id.* at 1331 (emphasis added). The Court determined that the policy, unlike that examined by the Supreme Court in *Santa Fe,* did not by its terms invite and encourage religious messages and was not subject to any monitoring by the school. *Id.* at 1336–37. In affirming its prior reasoning in upholding the policy at issue, the Eleventh Circuit quoted its earlier decision which concluded, "[t]he total absence of state involvement in deciding whether there will be a graduation message, who will speak, or what the speaker may say combined with the student speaker's complete autonomy over the content of the message [means] that the message delivered, be it secular or sectarian or both, is not state-sponsored." *Id.* at 1342 (quoting *Adler,* 206 F.3d 1070, 1071 (11th Cir.2000)).

### C. Analysis of TRO Requirements

Plaintiff is likely to suffer irreparable harm if the TRO is not granted as he will be forced to choose between taking part in an unwelcome religious exercise at his graduation ceremony, or foregoing his participation in a ceremony that marks the

culmination of his high school career, in violation of his First Amendment rights guaranteed by the United States Constitution. "The loss of First Amendment freedoms, for even a minimal period of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In contrast, inasmuch as the defendants have no legally protected interest in promoting messages of religious content at a school-sponsored graduation ceremony, they will suffer no harm by the issuance of the temporary restraining order. The balance of harm thus weighs heavily in favor of plaintiff. Bypassing the third prong momentarily, the public interest weighs in favor of protecting a student's first amendment right to be free from the unwanted intrusion of religion at a school-sponsored graduation exercise, particularly when it is considered that those students who wish to engage in individual prayer at the ceremony remain free to do so.

The more complex prong of the four-part analysis involves a determination of plaintiff's likelihood of success on the merits. This determination involves consideration of the particular facts here in light of binding United States Supreme Court precedent. Several factors about the Board's invocation policy as written and as applied, serve to entangle the government with religion in constitutionally repugnant ways. First, as was the situation in *Santa Fe*, the St. Albans graduation ceremony will take place on public property and will be largely administered by school officials. Second, as was the case in the "invocation and/or message" policy struck down by the Supreme Court in *Santa Fe*, there will undoubtedly be a minority viewpoint whose beliefs and wishes will not be reflected by the inclusion of an invocation at graduation. Indeed, pursuant to the *Santa Fe* policy, the entire student body, by majority vote, participated in the decision whether to have an invocation at football games.

In this case, however, it appears that only student class officers made the decision to include an invocation at graduation. While the senior class officers may have voted unanimously to include the invocation, with their votes perhaps representing the wishes of a majority of students in the senior class, the desires of the minority, and the desires of the plaintiff, are not respected by that democratic process. *See Santa Fe*, 530 U.S. at 305, 120 S.Ct. 2266 (noting that a majority vote placed students who hold different views "at the mercy of the majority.")

Third, the use of the term "invocation" surely contains a religious connotation, thus signifying an implicit endorsement of religious content by the Board. Unlike the optional language in *Santa Fe* of "invocation and/or message", the only type of message that is expressly endorsed in the text of the regulation here is an "invocation"—a term that the Supreme Court in *Santa Fe* found as primarily describing an appeal for divine assistance. *See Santa Fe*, 530 U.S. at 306–07, 120 S.Ct. 2266. *Cf. Brown v. Gilmore*, 258 F.3d 265, 278 (4th Cir.2001) (upholding a Virginia statute mandating a moment of silence for public school students and finding "[t]here is simply no evidence to indicate that Virginia has promoted any religion or promoted religion over nonreligion."). The plaintiff attended the St. Albans graduation ceremony in the year 2001 and learned that the invocation consisted of a prayer. There is no need to surmise as to the content of the proposed invocation for the 2002 graduation ceremony. Here, the proposed invocation has been made a part of the record in this case and it is seen to be marked by religious-based content. Finally, the review by Principal Williams removes any semblance that the invocation is entirely private speech rather than government speech inasmuch as the content of the message is, at least to a degree, regulated

by the school. *Cf. Adler*, 250 F.3d at 1331. It thus appears, based upon binding United States Supreme Court precedent in *Santa Fe*, that the plaintiff has a strong likelihood of success on the merits of his case.

Applying the four-factor analysis delineated in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 193 (4th Cir.1977), the plaintiff's motion is granted inasmuch as the regulation at issue is, at least as applied, plainly invalid. While acknowledging that those on both sides of this case at St. Albans High School have proceeded in good faith, the Establishment Clause precludes the giving of the invocation as a part of the graduation ceremony.

### III. *Conclusion*

It is accordingly ORDERED that the defendants be, and they hereby are, enjoined and restrained from allowing, and are hereby directed not to allow, the presentation of an invocation, including the proposed invocation quoted above at page 4, at the graduation exercises for St. Albans High School scheduled for this date. This order is binding upon the parties to this action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Plaintiff shall post with the Clerk of this Court a surety bond or cash bond in the amount of One Thousand Dollars ($1,000.00) conditioned for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.