**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————

**No. 04-2539**

—————

BOWE BELL & HOWELL COMPANY,

                              Plaintiff - Appellee,

     versus

ALBERT M. HARRIS; MICHAEL BROOKS; NIELS
ANDERSEN; JEFFREY LEUTNER; RICHARD A. NESTOR;
DAVID MEEHLING; DOCUMENT SERVICES,
INCORPORATED, d/b/a Trans-Print Software
Service, d/b/a Trans-Print Services,

                              Defendants - Appellants.

—————

Appeal from the United States District Court for the District of
Maryland, at Baltimore. Richard D. Bennett, District Judge. (CA-
04-3418-RDB)

—————

Argued: May 25, 2005                    Decided: July 15, 2005

—————

Before WILKINS, Chief Judge, and TRAXLER and KING, Circuit Judges.

—————

Affirmed by unpublished per curiam opinion.

—————

**ARGUED:** Timothy Guy Smith, Silver Spring, Maryland, for Appellants.
Douglas Glenn Edelschick, MCDERMOTT, WILL & EMERY, L.L.P.,
Washington, D.C., for Appellee. **ON BRIEF:** Melise Blakeslee, Sarah
E. Hancur, MCDERMOTT, WILL & EMERY, L.L.P., Washington, D.C.; Scott
H. Phillips, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Plaintiff Bowe Bell + Howell Company (BBH) brought an action against Defendants, Document Services, Inc. d/b/a Trans-Print Services (TPS) and several individuals associated therewith, alleging federal copyright and trademark infringement and related state law claims. BBH moved for a preliminary injunction to enjoin Defendants from conducting any business related to a software package called TransFormer. The district court granted BBH's motion and Defendants appeal from this order. We affirm.

## I.

In 1997, BBH purchased the assets of The Harris Group for $5,000,000. The Harris Group's primary asset included TransFormer and its intellectual property rights--such as the software's copyrights, trademarks, and exclusive right to license--and its related trade secrets and software "know-how," which included the provision of software maintenance to TransFormer users. The individual Defendants were all employees or shareholders of The Harris Group. In fact, Defendants Albert Harris and Michael Brooks originally developed TransFormer.

After BBH's purchase, the individual Defendants continued to work in some capacity for BBH. To protect TransFormer's intellectual property rights and trade secrets, BBH required its employees and customers to agree to keep confidential all

3

proprietary information related to TransFormer. Employees signed either a nondisclosure or a noncompetition agreement, or both. Customers purchasing the product agreed to certain licensing terms, which prohibited sharing the product with others without BBH's prior written consent.

Over time, the individual Defendants voluntarily resigned or were terminated from their employment at BBH. Before Defendant Brooks left BBH, however, he sent Defendant Harris, who had already left the company, BBH's 267-page customer list containing hundreds of customer names, contact information, and service histories. This list was saved on a password protected BBH server which was securely stored in BBH's Baltimore office and accessible only by BBH employees.

After leaving BBH, Defendant Brooks incorporated TPS, and the other individual Defendants associated themselves with TPS in some capacity. TPS advertised itself in a press announcement as having been formed by "the original developer and owner of The Harris Group's . . . software" and as "an alternative vendor for users of the TransFormer . . . perform[ing] software maintenance and provid[ing] programmer coding services." J.A. 41. In all, the announcement made eleven references to the registered trademark, "TransFormer," and also mentioned The Harris Group and BBH several times.

4

After a two-day hearing, the district court issued a written order granting BBH's motion for a preliminary injunction and enjoining Defendants from conducting any business relating to TransFormer. In reaching its decision, the district court applied the four-factor test relevant to determining whether injunctive relief is appropriate in a given case. The district court examined (1) the likelihood of irreparable harm to the plaintiff if injunctive relief were denied; (2) the likelihood of harm to the defendant if relief were granted; (3) the likelihood of success on the merits; and (4) the public interest. See Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 195-97 (4th Cir. 1977).

In considering these factors, the district court found the irreparable harm to BBH in denying the injunction substantially greater than the harm to Defendants in granting the injunction. The district court concluded that the balance of hardships plainly favored BBH in large part because the evidence demonstrated a likelihood of success on the merits as to several of BBH's claims for misappropriation of trade secrets, trademark and copyright infringement, and breach of noncompetition and nondisclosure agreements. Many of these violations, the district court noted, could not be compensated by money damages alone. In contrast, the district court determined that the harm to Defendants was relatively small because TPS's business was still evolving and involved working with other software products aside from

5

TransFormer.  The district court further pointed out that the individual Defendants, who are well-educated, can work with other types of computer software too.

Particularly with respect to BBH's likelihood of success on the merits, the district court determined that in "cop[ying] the TransFormer source code from the licensee" onto the TPS computer and using TransFormer to service customers, J.A. 1452, TPS likely violated the TransFormer License Agreement.  Further, in using the registered trademark, "TransFormer," eleven times in its press announcement, TPS's advertising was likely to cause, and continue to cause, confusion in the marketplace.  While employed by BBH, moreover, Defendant Brooks' transmission of BBH's customer list to Defendant Harris, who was no longer employed with BBH, likely misappropriated a BBH trade secret.  Finally, the district court found that many of the individual Defendants' association with TPS likely violated either their noncompetition or nondisclosure agreements with BBH.

The district court also determined that the public interest favored granting the injunction.  The district court reasoned that the public has an interest in enforcing restrictive covenants that protect business interests, and that the public has an interest in preventing the misleading and deceptive use of trademarks or the infringement of copyrights.

After having thoroughly analyzed the evidence presented by the parties with respect to each factor, the district court concluded that all the relevant factors weighed in favor of granting BBH's motion for preliminary injunction and, accordingly, issued an order to that effect.

## II.

"We review the grant or denial of a preliminary injunction for abuse of discretion, recognizing that 'preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances.'" MicroStrategy, Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991)). "We review factual determinations under a clearly erroneous standard and legal conclusions de novo." Safety-Kleen, Inc. (Pinewood) v. Wyche, 274 F.3d 846, 859 (4th Cir. 2001).

After careful consideration of the parties' positions, both as presented in their briefs and at oral argument, we find nothing in the record to suggest that the district court abused its discretion in granting BBH's motion for preliminary injunction. Defendants have failed to demonstrate that any fact found by the district court is clearly erroneous or that any conclusion of law drawn from

7

those facts is in error.  Accordingly, we affirm based on the well-reasoned opinion of the district court.

AFFIRMED