UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

CANDLE FACTORY, INCORPORATED;
CHERYL HANNANT,
          *Plaintiffs-Appellees,*

v.

TRADE ASSOCIATES GROUP, LIMITED,
          *Defendant-Appellant,*

and

TERRY'S VILLAGE,
          *Defendant.*

No. 01-1037

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-00-15-2-BO2)

Argued: October 29, 2001

Decided: November 30, 2001

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

---

Affirmed by unpublished per curiam opinion. Judge Luttig wrote an
opinion concurring in the judgment.

---

### COUNSEL

**ARGUED:** Michael B. Allen, BARNES & THORNBURG, Chicago,
Illinois, for Appellant. Joel David Joseph, Washington, D.C., for

Appellees. **ON BRIEF:** Steven B. Epstein, HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

On December 14, 2000, the district court for the Eastern District of North Carolina issued a preliminary injunction against certain conduct of defendants Trade Associates Group, Limited and Terry's Village. By that order, the defendants were directed to cease and desist from violating the copyright owned by Candle Factory, Incorporated and Cheryl Hannant for seashell-shaped candles. Trade Associates Group ("TAG") appeals to this Court from the entry of the injunction order, maintaining that it should be vacated. As explained below, the district court committed no reversible error, and we affirm.

I.

In January 1993, plaintiff Cheryl Hannant ("Ms. Hannant"), doing business as Candle Factory, obtained a copyright for seashell-shaped candles — Copyright Registration VAU 245-286 — from the Copyright Office of the United States. Ms. Hannant then incorporated plaintiff Candle Factory, Inc. in the State of North Carolina, and she assigned Candle Factory all her rights in the copyright relating to the seashell-shaped candles. Candle Factory manufactures and markets its seashell-shaped candles in North Carolina.

TAG is a corporate entity headquartered in the State of Illinois. It conducts its business, as a retailer of candles and other household-related products, on a nationwide basis, including in North Carolina. In the fall of 1999, TAG added seashell and starfish-shaped candles to its product line. TAG's candles are made for it by a company

known as Will & Baumer at a manufacturing facility in Mexico. Candle Factory and Ms. Hannant (collectively "Candle Factory") allege in this injunction proceeding that TAG's manufacturing and marketing of seashell-shaped candles infringes upon their copyright. TAG denies these allegations, contending that its candles are non-infringing, and that they were independently created from molds of actual seashells and starfish.

On November 15, 1999, Candle Factory forwarded TAG a letter advising that "Candle Factory has a copyright on the sea-shell candles that you are showing in your 2000 Catalogue." J.A. 46. This letter further asserted that, unless a settlement could be reached between Candle Factory and TAG within ten days, TAG would be made a defendant in a copyright-infringement lawsuit being pursued by Candle Factory in the Eastern District of North Carolina against an unrelated business called Two's Company, Inc. On January 28, 2000, Candle Factory sent TAG another letter, with which it enclosed a copy of its copyright. That letter asserted that, if TAG would cease the marketing and selling of its allegedly-infringing seashell-shaped candles, Candle Factory would abandon its potential claims for damages against TAG.

In response to the contentions and assertions made in these letters, TAG promptly filed a declaratory judgment action against Candle Factory in the Northern District of Illinois ("Illinois Proceeding"). On March 30, 2000, Candle Factory moved to dismiss the Illinois Proceeding for lack of jurisdiction and improper venue, asserting that it conducted no business in Illinois. At the same time, Candle Factory filed its complaint in the Eastern District of North Carolina for declaratory and injunctive relief against TAG and Terry's Village. Candle Factory alleged therein, inter alia, that the defendants were infringing on its copyright for seashell-shaped candles ("North Carolina Proceeding").

Thereafter, on June 26, 2000, TAG filed a motion in the North Carolina Proceeding seeking to dismiss, stay, or transfer that lawsuit to the Northern District of Illinois. In response, Candle Factory agreed to a stay in the North Carolina Proceeding while the Illinois court considered Candle Factory's motion to dismiss. Accordingly, the North Carolina district court, on August 10, 2000, entered a sixty-day

stay of proceedings. On September 13, 2000, before the stay had expired, the Illinois Proceeding was dismissed.

In October 2000, TAG filed its answer in the North Carolina Proceeding, and Candle Factory promptly moved, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for entry of a temporary restraining order ("TRO") against TAG and Terry's Village. The district court, on November 20, 2000, conducted a hearing on Candle Factory's TRO request, and it decided to convert the motion into a request for a preliminary injunction. Thereafter, on December 14, 2000, the district court issued its preliminary injunction order, *Candle Factory, Inc. v. Trade Assocs. Group, Ltd.*, No. 2:00-CV-15-BO(2) (E.D.N.C. Dec. 14, 2000) ("Preliminary Injunction"). In its order, from which this interlocutory appeal is taken, the court found that "the balance of hardship in this case favors the Plaintiffs," and concluded that the "Plaintiffs have demonstrated a likelihood of irreparable harm that outweighs any harm to Defendants." *Id.* at 3. The Preliminary Injunction directed TAG and Terry's Village to "cease and desist from violating [Candle Factory's] copyright on the seashell candles." *Id.*

TAG promptly sought appellate review of the Preliminary Injunction in this Court and, on December 18, 2000, it filed its notice of appeal.[1] It also promptly moved in the district court for a stay of the Preliminary Injunction pending appeal, which was denied on March 30, 2001. We possess jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(a) (courts of appeals possess jurisdiction over appeals from "[i]nterlocutory orders of the district courts of the United States . . . granting . . . injunctions").

## II.

This Court reviews "the grant or denial of a preliminary injunction for abuse of discretion, recognizing that 'preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances.'" *Microstrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir.

---

[1]Terry's Village has not joined in TAG's appeal of the Preliminary Injunction.

2001) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 806 (4th Cir. 1991)). An abuse of discretion occurs when the district court "appl[ies] an incorrect preliminary injunction standard, . . . rest[s] its decision on a clearly erroneous finding of a material fact, or . . . misapprehend[s] the law with respect to underlying issues in litigation." *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989) (internal quotations omitted). We review for clear error a district court's findings of fact in connection with the issuance of a preliminary injunction. *Gilliam v. Foster*, 61 F.3d 1070, 1078 n.5 (4th Cir. 1995) (citing *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994)).

## III.

In order to secure entry of a preliminary injunction order, an applicant must satisfy the four-factor test established by this Court in *Blackwelder Furniture Co. of Statesville, Inc. v. Selig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir. 1977). The four *Blackwelder* factors are: (1) likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) likelihood of harm to the defendant if the request is granted; (3) likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *Id.* at 193. In applying *Blackwelder*, a court must "balance the 'likelihood' of irreparable harm to the plaintiff against the 'likelihood' of harm to the defendant." *Microstrategy Inc.*, 245 F.3d at 339 (quoting *Blackwelder*, 550 F.2d at 195). If this balance of hardships is in the plaintiff's favor, then "[i]t will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation." *Id.* (quoting *Blackwelder*, 550 F.2d at 195). In contrast, if the balance of hardships is substantially equal as between the plaintiff and defendant, then "the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success." *Id.* (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 808 (4th Cir. 1991)).

## A.

In its appeal of the Preliminary Injunction, TAG first contends that Candle Factory delayed too long in seeking injunctive relief and, as

a result, the district court abused its discretion in finding that Candle Factory would suffer irreparable injury unless a preliminary injunction issued. TAG maintains that "Candle Factory's unexplained and unexcused one-year delay in seeking a TRO or a preliminary injunction defeats its claim of irreparable harm as a matter of law." Appellant's Br. at 11. In support of this contention, TAG directs this Court's attention to our decision in *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75 (4th Cir. 1989), in which we recognized that an inordinate delay in initiating a preliminary injunction proceeding may "indicate an absence of the kind of irreparable harm required to support a preliminary injunction." *Id.* at 80. In *Quince Orchard*, we upheld the denial of a preliminary injunction request when the plaintiffs had waited nine months before seeking injunctive relief. *Id.* The central points underlying our decision were (1) the district court's discretionary denial of the injunctive relief, (2) the time sensitive nature of the project involved, and (3) the fact that more expeditious action by the plaintiffs would have avoided major disruptions and increased costs. *Id.*

Our decision in *Quince Orchard* instructs that any delay attributable to plaintiffs in initiating a preliminary injunction request, coupled with prejudicial impact from the delay, should be considered when the question of irreparable harm to plaintiffs is balanced against harm to defendants.[2] Despite TAG's protestations otherwise, *Quince Orchard* simply does not require us to find, as a matter of law, that

---

[2]Two other circuits have expressly considered the delay issue and are in accord with *Quince Orchard*. The Ninth Circuit has recognized that "[a] delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief." *Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213, 1213-14 (9th Cir. 1984) ("We would be loath to withhold relief solely on that ground, but we do give that fact consideration in measuring the claim of urgency."). The Tenth Circuit has also considered whether a plaintiff's delay in seeking injunctive relief undermined its claim of irreparable injury. In *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536 (10th Cir. 1994), that court determined that "[w]hile delay can undermine a claim of irreparable harm," *id.* at 1543, it concluded that a preliminary injunction was proper because the plaintiff had tried to reach a settlement with the defendant and acted within three months of failing to reach such a settlement. *Id.* at 1544.

the plaintiff suffered no irreparable injury because it delayed in initiating its request for a preliminary injunction.

In further support of its position, TAG, pursuant to Local Rule 36(c),[3] cites our decision in *Magnussen Furniture, Inc. v. Collezoine Europa USA, Inc.*, No. 96-1917, 1997 U.S. App. Lexis 14861, at *10 n.6 (4th Cir.). Reliance on the unpublished authority of *Magnussen Furniture*, however, is inappropriate. Our *Quince Orchard* decision constitutes published authority on the delay issue and, in the words of Local Rule 36(c), it "would serve as well." In any event, *Magnussen Furniture* is of no assistance to TAG in this appeal.

In *Magnussen Furniture*, we affirmed the denial of a preliminary injunction because plaintiff's products appeared to be non-copyrightable. *Id.* at *9. As additional support for our decision, we observed that the plaintiff was not entitled to a preliminary injunction because it "did not seek copyright protection for its own line of tables for an additional 16 months." *Id.* at *10 n.6. Besides not constituting precedent in this Court, *Magnussen Furniture* is distinguishable from this case on its facts. Unlike in *Magnussen Furniture*, the district court in this case specifically determined that the manufacture and sale of Candle Factory's seashell-shaped candles were subject to copyright protection. Moreover, we must observe that Candle Factory's delay in initiating its injunction proceedings was substantially less than the delay involved in *Magnussen Furniture*, and that the delay at issue in this case did not relate to a failure to seek copyright protection.[4]

TAG also maintains on appeal that the district court committed clear error in finding that Candle Factory would suffer irreparable harm unless a preliminary injunction was issued. We are unable to

---

[3]Our Local Rule 36(c) provides that "[i]f counsel believes . . . that an unpublished disposition of any court has precedential value in relation to a material issue . . . and that there is no published opinion that would serve as well, such disposition may be cited." 4th Cir. R. 36(c).

[4]A substantial portion of the delay in this case is satisfactorily explained by TAG's filing of its motion to dismiss, stay, or transfer the North Carolina Proceeding, resulting in the sixty-day stay being entered therein with Candle Factory's consent.

agree. Although Candle Factory was slow in initiating its request for injunctive relief, its delay, as previously discussed, does not as a matter of law preclude a finding by the court of irreparable harm. Moreover, the reasons for Candle Factory's delay are partially explained, and, importantly, TAG does not contend that the delay resulted in any prejudice to its interests. By contrast, the record reveals an ample basis for the finding that Candle Factory would be irreparably harmed in the absence of injunctive relief. For example, the record shows that Candle Factory possessed a valid copyright for seashell-shaped candles. The record also contains evidence supporting the contention that TAG's seashell-shaped candles infringe upon Candle Factory's copyright, and there is evidence that all of Candle Factory's business is derived from its sale of seashell-shaped candles. *See* Preliminary Injunction at 3 (finding that TAG "ha[s] produced a number of candles that are identical in shape and coloring to the candles produced by [Candle Factory]"). Thus, when the record is examined in its entirety and in context, the court's finding that Candle Factory would suffer irreparable harm in the absence of a preliminary injunction was not clearly erroneous.

### B.

As its second basis for vacating the Preliminary Injunction, TAG maintains that the district court abused its discretion by failing to consider the harm to TAG from issuance of a preliminary injunction. In support of this position, TAG contends that the court's decision to fix the security for the injunction, mandated by Rule 65(c) of the Federal Rules of Civil Procedure, at the nominal sum of $500 indicates a lack of adequate consideration by the court of the harm the Preliminary Injunction would cause TAG.[5] We are again unable to agree with TAG. The evidence of record amply supports the court's finding that Candle Factory possessed a valid copyright upon which TAG's

---

[5]Rule 65(c) of the Federal Rules of Civil Procedure provides in relevant part as follows:

> No . . . preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

seashell-shaped candles infringed. As such, TAG had no right to sell infringing candles in the first instance. In this context, the district court's decision to fix a bond in the sum of $500 was an appropriate exercise of its discretion, and its finding that TAG would suffer little harm if enjoined from further selling its infringing seashell-shaped candles is not clearly erroneous. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999) ("Where the district court determines that the risk of harm is remote, or that the circumstances otherwise warrant it, the court may fix the amount of the bond accordingly. In some circumstances, a nominal bond may suffice.") (internal citation omitted).

## C.

TAG, as its third basis for appeal, contends that the district court abused its discretion by finding that "the balance of hardship in this case favors the Plaintiffs," and that the "Plaintiffs have demonstrated a likelihood of irreparable harm that outweighs any harm to Defendants." Preliminary Injunction at 3. Once again, we are unable to agree. As discussed above, the evidence amply supports the court's finding that Candle Factory would suffer irreparable harm in the absence of injunctive relief, and also amply supports its finding that any injury to TAG from issuance of the Preliminary Injunction would be slight. The district court did not abuse its discretion in balancing the harms to the parties and in concluding that the balance tipped in favor of Candle Factory.

## D.

Finally, TAG maintains that the court abused its discretion by improperly concluding that Candle Factory was likely to succeed on the merits of its copyright claim. TAG's position on this point is also faulty because, when the balance of hardships is in a plaintiff's favor, then "[i]t will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation." *Microstrategy Inc.*, 245 F.3d at 339 (internal quotations omitted). Candle Factory has sufficiently met this burden. It has shown, inter alia, that it possesses a valid copyright for seashell-shaped candles and that TAG's competing candles infringe upon this copyright.

IV.

Because the district court did not abuse its discretion in awarding Candle Factory the Preliminary Injunction against TAG, we affirm.

*AFFIRMED*

LUTTIG, Circuit Judge, concurring in the judgment:

Because I believe that our Circuit's precedent of *Blackwelder Furniture Co. of Statesville, Inc.* v. *Seilig Manufacturing Co., Inc.*, 550 F.2d 189 (4th Cir. 1977), cannot be reconciled with the controlling precedent from the Supreme Court of the United States governing the standards appropriate for issuance and appellate review of injunction judgments, I concur only in the court's judgment, not in its opinion.