**COLLEZIONE EUROPA U.S.A., INC., Plaintiff,**

v.

**HILLSDALE HOUSE, LTD., Defendant.**

**No. 1:01–CV–00853.**

United States District Court, M.D. North Carolina.

Feb. 6, 2003.

Teresa Raquel Robinson, Peter Joseph Juran, Blanco Tackabery Combs & Matamoros, P.A., Winston–Salem, NC, for Plaintiff.

Richard M. McDermott, Jason M. Sneed, Alston & Bird, LLP, Charlotte, NC, for Defendant.

*MEMORANDUM OPINION
and ORDER*

OSTEEN, District Judge.

Plaintiff Collezione Europa U.S.A., Inc. ("Collezione") instituted this action against its competitor, Defendant Hillsdale House, Ltd. ("Hillsdale") on September 7, 2001. Collezione seeks a declaratory judgment determining that its marketing and sale of certain items of furniture does not infringe or violate any of Hillsdale's rights. Hillsdale has filed a counterclaim alleging that Collezione's marketing and sale of the furniture does violate Hillsdale's rights under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and also asserting claims for unfair competition and unjust enrichment under North Carolina law.

The matter is now before the court on Collezione's motion to dismiss the second and third counts of Hillsdale's counterclaim, motion to amend Collezione's answer to Hillsdale's counterclaim, and motion for summary judgment, as well as Hillsdale's motion for summary judgment on each of its counterclaims. For the reasons set forth herein, Collezione's motion to dismiss the second and third counts of Hillsdale's counterclaim will be granted. Hillsdale's motion for summary judgment on the remaining count, copyright infringement, will be granted. Collezione's motion to amend its answer will be denied. Collezione's motion for summary judgment will be denied.

## I. BACKGROUND

Collezione and Hillsdale are competitors engaged in the production and sale of furniture to retailers. Collezione is a New Jersey corporation; Hillsdale is a Kentucky corporation. Both companies have exhibited their lines at the international furniture show held twice each year in High Point, North Carolina.[1]

1. This show is commonly referred to as the High Point Furniture Market.

Collezione "freely acknowledges that many of its designs are based on designs originated by others which Collezione sees, likes, and produces similar designs and 'knocks off' or copies." (Pl.'s Br. Opp'n Def.'s Mot. Summ. J. at 1–2.) Its agents search furniture markets and showrooms for items they believe can be reproduced and sold at lower prices. Collezione purchases items and ships them to China for wholesale copying and reproduction. It then imports the finished product from China and offers it for sale to furniture retailers in the United States under the Collezione name.

In October 1999, Hillsdale developed a line of furniture known as the "Bordeaux Collection." The line includes a dinette table and chairs, baker's rack, and bar stools, among other pieces.[2] (Def.'s Mem. Supp. Mot. Summ. J. Ex. D.) Each of the pieces in the collection features decorative sculpted leaves made out of a pewter-look material, which are incorporated into the design of the furniture. A sculpted "triple-leaf" figure, consisting of one leaf pointing upward and two flanking leaves pointing downward, adorns the back of the chair and bar stool and the top of the baker's rack. A different pattern of three overlapping leaves pointing downward embellishes the legs of the glass-topped dinette table and baker's rack. Hillsdale

first sold items from the Bordeaux Collection in April 2000, and has continued to market the items for sale since that date.

In January 2001, Hillsdale applied to the United States Copyright Office to register the items in the Bordeaux Collection for copyright protection.[3] The Register of Copyrights issued a Certificate of Registration on March 28, 2001,[4] and again on May 2, 2001, for the sculptural features of the collection. (Def.'s Mem. Supp. Summ. J. Exs. A, B.)

Sometime after April 2000, Collezione's president, Mr. Leonard Frankel, purchased a set of furniture at a furniture showroom and sent it to a manufacturer in China with instructions to copy it in time for the April 2001 High Point Furniture Market.[5] No modifications were ordered. The resulting pieces became what is known by the parties as Collezione's T–6985 Group,[6] which has been on the market since its April 2001 debut. The two lines of furniture appear nearly identical to a casual observer, as evident from Attachments A and B. Mr. Frankel has stipulated that the T–6985 Group and the Bordeaux Collection are "substantially similar." (Frankel Dep. at 42–43.)

On August 10, 2001, Hillsdale's attorneys wrote to Collezione demanding that it cease selling and/or offering for sale its T–

---

**2.** A picture of the items is appended to this opinion as Attachment A.

**3.** Hillsdale first submitted its application to register each piece in the collection. Following receipt of correspondence from the copyright office indicating that only the sculptural features of the furniture were copyrightable, Hillsdale resubmitted its application in January 2001, identifying the work as "sculpted features on 3–dimensional sculpture." (Def.'s Br. Supp. Summ. J. at 4.)

**4.** The certificate actually reflects an effective date of "3–28–00," but this appears to be a clerical error, as the application for registration was not received by the copyright office

until January 22, 2001. (Def.'s Br. Supp. Summ. J. Ex. A.) Hillsdale also identifies the date of registration as March 28, 2001.

**5.** Mr. Frankel does not recall where he purchased this set of furniture or whether it was in fact from the Bordeaux Collection. (Pl.'s Resp. Def.'s First Set Interrogs. ¶ 2); (Def.'s Mem. Supp. Mot. Summ. J. Ex. E).

**6.** The furniture produced by Collezione was also referred to as the " '685 Group" in many of the pleadings in this case. The correct name of the line at issue is the "T–6985 Group." A picture of the T–6985 Group is attached to this opinion as Attachment B.

6985 Group because the items in that group, specifically, the sculptural features, were substantially similar to those of the Bordeaux Collection. Notwithstanding Hillsdale's demand, Collezione continued to place orders for tables and chairs with its manufacturer in China and to offer the items for sale, leading to this lawsuit.

## II. DISCUSSION

### A. Collezione's Motion to Dismiss Counterclaims

#### 1. Preemption/Standard of Review

Collezione has moved to dismiss Hillsdale's second and third counterclaims, which are, respectively, claims for unfair competition and unjust enrichment under North Carolina law. Collezione argues that these claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because they are preempted by the Copyright Act.

■ Congress has specifically preempted all state law rights that are equivalent to those protected under federal copyright law. *See* 17 U.S.C. § 301(a). For preemption to apply, three conditions must be met: (1) the work at issue must be of the type protected by the copyright laws, (2) the right claimed must be equivalent to a right protected under federal copyright law, and (3) the cause of action must not have arisen before January 1, 1978. *See Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F.Supp. 1523, 1531 (S.D.N.Y.1985).

This suit clearly satisfies the first and third conditions. Copyright law applies to "original works of authorship fixed in any tangible medium of expression," including "pictorial, graphic and sculptural works." *Id.* at 1532 (quoting 17 U.S.C. § 102(a)). Because Hillsdale asserts that Collezione has violated its copyright of the sculptural features of the Bordeaux Collection, there can be little argument that the works at issue are within the subject matter of the copyright laws. Moreover, the cause of action meets the January 1, 1978, cut-off date.

The remaining condition, that of the nature of the right asserted, is a more complex issue. The court must determine whether the causes of action in Hillsdale's counterclaim, unfair and deceptive trade practices, in violation of North Carolina General Statute § 75–1.1, and unjust enrichment, as defined by North Carolina common law, are being asserted to protect rights that are equivalent to the rights protected by federal copyright law.

■ In this inquiry, the court will apply Nimmer's oft-cited "extra-element" test for preemption:

[A] right which is 'equivalent to copyright' is one which is infringed by the mere act of reproduction, performance, distribution or display.... If under state law the act of reproduction, performance, distribution or display, ... will *in itself* infringe the state created right, then such right is preempted. *But if other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display,* in order to constitute a state created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no preemption.

*Id.* at 1535 (quoting 1 M. Nimmer, *The Law of Copyright* § 1.01[B][3] (emphasis added)). The extra element "must be one which changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim." *Id.* If the purportedly extra element is not qualitatively different, the state law action is preempted.

#### 2. Unfair Trade Practices

■ Count Two of Hillsdale's counterclaim, unfair trade practices under North Carolina General Statute § 75–1.1, alleges

that Collezione has intentionally deceived consumers by marketing and selling its furniture as if it contained its own original designs when the designs are in fact those of Hillsdale. Hillsdale asserts that these acts on the part of Collezione "are more than mere copyright infringement; they are immoral, unethical, unscrupulous and substantially injurious to consumers." (Def.'s Ans. and Counterclaims ¶ 33.)

In support of its argument that its unfair trade practices claim states a qualitatively different element than copyright infringement alone, Hillsdale relies on *Baldine v. Furniture Comfort Corp.*, 956 F.Supp. 580 (M.D.N.C.1996), in which the court held that the plaintiff's state law claims for unfair trade practices were not preempted. However, the plaintiff in *Baldine* alleged that the defendant had falsely promised to pay the plaintiff in exchange for the use of her design, and then failed to make such payment once the design had been obtained. Accordingly, the court held that the claim was not preempted because it was based on the defendant's intentional misrepresentation to the plaintiff. In that situation, "the fraud and not the actual copyright violation would be the gravamen of the claim." 956 F.Supp. at 587.

Here, by contrast, Hillsdale has alleged no fraud; no relationship existed between the parties prior to the acts constituting the alleged infringement. The copyright violation remains the gravamen of the claim.

Moreover, the court notes that Hillsdale has not alleged that Collezione deceptively "palmed off" its furniture as the Bordeaux Collection, such that consumers believed that the T–6985 Group was actually the Bordeaux Collection. *See Compco Corp. v. Day–Brite Lighting, Inc.*, 376 U.S. 234, 238, 84 S.Ct. 779, 782, 11 L.Ed.2d 669 (1964) (recognizing tort of "palming off" even where article at issue not protected by federal copyright law). Hillsdale has pointed to no other case in which mere deceptiveness, in the absence of "palming off," constitutes a qualitatively additional element which is separate and distinct from the alleged copying of its designs. Calling the copying deceptive because Collezione did not give credit to Hillsdale for originating the design simply restates the underlying conduct, unauthorized copying, which gives rise to the claim.

 Furthermore, Hillsdale's assertion that the conduct was "immoral, unethical, unscrupulous and substantially injurious to consumers" also fails to state an additional element to make the claim qualitatively different from a copyright infringement claim. As the court noted in *Mayer*, " '[c]ommercial immorality' appears to be merely a judgmental label attached to odious business conduct, not an extra element." 601 F.Supp. at 1535. Even if commercial immorality were considered an extra element, it would only change the scope, not the nature of the action: "it would permit the action to go forward when the infringing conduct is immoral, but not when it is not immoral." *Id.* The court, therefore, finds that Hillsdale's claim for unfair and deceptive trade practices is preempted.

3. Unjust Enrichment

 Count Three of Hillsdale's counterclaim, unjust enrichment under North Carolina law, alleges that Collezione's unauthorized copying of Hillsdale's designs has conferred a benefit upon Collezione which it has retained inequitably. This claim also fails to state any element qualitatively different from the copyright infringement claim.

Although Hillsdale cites several cases in which courts have held unjust enrichment claims not to be preempted, each of these cases has involved at least a quasi-contrac-

tual relationship between parties who had previous contact with one another, giving rise to a legitimate expectation of payment. *See, e.g., CSM Investors, Inc. v. Everest Dev., Ltd.,* 840 F.Supp. 1304 (D.Minn.1994) (finding unjust enrichment claim not preempted where plaintiff copied defendant's architectural plans after refusing to pay defendant's asking price for plans); *Howard v. Sterchi,* 725 F.Supp. 1572 (N.D.Ga.1989) (treating unauthorized use of log home designs as breach of agreement to pay royalties). In the leading case in which the parties did not have a previous relationship, the court questioned that very fact and noted that the unjust enrichment claim was based on misappropriation of data, not copying. *See Weigel Broad. Co. v. Topel,* 1985 WL 2360, at *5 (N.D.Ill.1985) ("[W]e question whether plaintiff can maintain an action for unjust enrichment absent some relationship (contractual, employment or otherwise) between the parties.").

Hillsdale's claim for unjust enrichment is based not on any understanding, discussions, or quasi-contract between the parties, but on the mere act of copying and selling furniture and retaining any benefit derived therefrom. The court finds that is not sufficient to establish a qualitatively different element from copyright infringement, because the calculation of damages in a successful copyright infringement suit would necessarily include any wrongful gain. Therefore, the court will dismiss Count Three of Hillsdale's counterclaim as preempted by federal copyright law.

### B. Cross–Motions for Summary Judgment

Hillsdale has moved for summary judgment on its claim of copyright infringement, while Collezione has moved for summary judgment on its request for declaratory judgment that Defendant does not have a valid copyright and Collezione has not violated Hillsdale's rights. Although these motions address distinct claims, they concern identical issues: whether Hillsdale has a valid copyright in its Bordeaux Collection and, if so, whether Collezione is liable for infringement of that copyright. Therefore, the court will consider these motions concurrently.

Summary judgment is appropriate when the pleadings and other submissions show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, if the evidence "presents a sufficient disagreement to require submission to a jury," summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986). That the parties appear on cross-motions for summary judgment is evidence that they agree that the issue is amenable to decision as a matter of law. *See, e.g., Steinberg v. Columbia Pictures Indus., Inc.,* 663 F.Supp. 706, 709 (S.D.N.Y.1987).

Summary judgment is often unavailable in copyright cases, given their subjective nature. *See Columbia Pictures Indus., Inc. v. Landa,* 974 F.Supp. 1, 7 (C.D.Ill.1997) (citing *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2d Cir.1980)). However, "when the evidence is so overwhelming that a court would be justified in ordering a directed verdict at trial, it is proper to grant summary judgment." *Steinberg,* 663 F.Supp. at 709 (citing *Silverman v. CBS, Inc.,* 632 F.Supp. 1344, 1352 (S.D.N.Y.1986)). Cer-

tain matters of law, including "determinations of copyrightability in all instances," are always reserved to the judge and are therefore appropriate for summary judgment. 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.10[A]. As Judge Easterbrook put it, "[w]hether [items] are copyrightable is a question of law, which the court will decide (perhaps in response to dispositive motions ...). A jury has nothing to do with this subject." *Pivot Point Int'l, Inc. v. Charlene Prod., Inc.*, 932 F.Supp. 220, 225 (N.D.Ill.1996) (Easterbrook, J., sitting by designation).

### 1. Standard for Copyright Infringement

■ In order to establish a claim of copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*, two elements must be proven: (1) ownership of a valid copyright by the party complaining of infringement and (2) copying of the complaining party's work by the infringing party. *See Keeler Brass Co. v. Continental Brass Co.*, 862 F.2d 1063, 1065 (4th Cir.1988).

■ Although the statute establishes that a certificate of registration from the United States Copyright Office constitutes prima facie evidence of the validity of the copyright, *see* 17 U.S.C. § 410(c), "[w]here other evidence in the record casts doubt on the question, validity will not be assumed."[7] *Diamond Star Bldg. Corp. v.*

*Freed*, 30 F.3d 503, 505 n. 1 (4th Cir.1994). A certificate of registration in a copyright infringement action shifts the burden of proof to the party defending the infringement claim, who must produce evidence weighing against validity. *See Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir.1985). In the instant case, therefore, Hillsdale's certificates of registration shift the burden at summary judgment to Collezione to produce evidence placing the validity of Hillsdale's copyrights at issue. In addition, the "mute testimony" of the article itself should also assist the court in resolving the issue. *See id.*

■ Collezione has admitted the second element noted above—that it copied Hillsdale's works. (Pl.'s Br. Opp'n Def.'s Mot. Summ. J. at 4 ("Collezione does not contest the claims that its designs resulted from its access to, acquisition of, and copying of Hillsdale House's design."); Pl.'s Br. Supp. Mot. Summ. J. at 2 ("Collezione has admitted to copying the Bordeaux Collection furniture line.")). Even absent Collezione's admission, the court would find that Collezione's access to the Bordeaux Collection[8] and the substantial similarity of the two lines of furniture raise a presumption of copying that Collezione has failed to rebut. *See Towler v. Sayles*, 76 F.3d 579, 582 (4th Cir.1996). Therefore, the court will focus its attention on the issue of the validity of Hillsdale's copyright. *See Keeler Brass*, 862 F.2d at 1065.

---

**7.** This is primarily because the attention the copyright office gives an application for registration "is not like the intense and prolonged scrutiny required for patent and trademark registration." *Carol Barnhart Inc. v. Economy Cover Corp.*, 594 F.Supp. 364, 367 (E.D.N.Y.1984). In fact, Hillsdale's second certificate of registration, submitted by Mr. David Brill on April 24, 2001, bears an effective date of May 2, 2001, the same date the application was received by the copyright office. (Def.'s Mem. Supp. Def.'s Mot. Summ.

J. Ex. B.) As the *Carol Barnhart* court noted, this practice "is not an indication that the Copyright Office acted with great deliberation and careful consideration when it registered the ... works." 594 F.Supp. at 367.

**8.** The Bordeaux Collection was publicly displayed and offered for sale in April 2000, at the High Point Furniture Market and through furniture dealers, and possibly as early as January 2000. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. at 3.)

### 2. Scope of Hillsdale's Copyright Registration

■ An analysis of the validity of Hillsdale's copyright must begin with an understanding of the scope of its copyright registration. As Hillsdale points out, the certificates of registration obtained by it from the United States Copyright Office do not purport to copyright the entire Bordeaux Collection. Rather, the space on the forms reserved for "Nature of This Work" is completed with the description, "sculpted features on 3–dimensional sculpture." (Def.'s Mem. Supp. Def.'s Mot. Summ. J. Exs. A, B.) Although the certificate and attached copies of works, dated March 28, 2001, require some interpretation as to what those "sculpted features" actually are, the second certificate, issued May 2, 2001, provides more guidance. (*Id.* at Ex. B.) The attachments to that certificate include descriptions of the items appearing in the pictures, including the phrase "decorative leaf and medallion casting accents." (*Id.*) This, along with the description of the copyrighted material as sculpted features and the pictures themselves, leads the court to find that Hillsdale's certificates of registration refer to and are limited to the sculpted leaves adorning the furniture.[9]

### 3. Validity of Hillsdale's Copyright

#### a. Originality

■ The Copyright Act, as noted in Part II(A)(1) above, provides protection for "original works of authorship fixed in any tangible medium of expression," which include "pictorial, graphic, and sculptural works." 17 U.S.C. § 102(a). The owner of a valid copyright holds the exclusive right to reproduce the copyrighted work, prepare derivative works, distribute copies, or publicly display the copyrighted work. *See* 17 U.S.C. § 106. A copyright, therefore, is best described as "the author's right to prohibit the copying of the author's intellectual invention," the essence of which is the work's originality. *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 492 (4th Cir.1996). Originality requires "independent creation plus a modicum of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 346, 111 S.Ct. 1282, 1288, 113 L.Ed.2d 358 (1991). A work may be copyrighted even if "the quantum of originality is minimal." *Superior Form,* 74 F.3d at 492.

■ Collezione contests the originality of the Hillsdale design. Though the sculpted leaves at issue here might never be displayed in a gallery of fine art, there is evidence that they were independently developed and designed by Hillsdale's employees, Mr. Uri Glattstein and Mr. Bill Elminger, and that Mr. Elminger was paid commissions for his work relating to the design of the Bordeaux Collection. (Pl.'s Br. Opp'n Def.'s Mot. Summ. J. Ex. B at 4–6.) As Hillsdale notes, it does not have the burden of establishing the originality of the entire Bordeaux Collection, merely the sculptural elements in which it claims a copyright. Moreover, Collezione has offered no evidence to rebut Hillsdale's assertion that its employees designed the sculptural elements, and, further, has pointed to no other lines of furniture in which such elements have appeared. Giv-

---

9. A similar result was reached where a certificate of registration listed a "San Diego Zoo Tiger" as "3–dimensional sculpture" and was submitted with accompanying photographs of a tiger costume. *Celebration Int'l, Inc. v. Chosun Int'l, Inc.,* 234 F.Supp.2d 905, 911 (S.D.Ind.2002). The district court determined that the registration did not describe a copyright on all tiger costumes, or even on the whole costume, but instead was limited only to the "sculptural aspect" of the costume (the tiger head on the garment's hood) and did not extend to the useful article (the "garment portion" of the costume). *Id.* at 914–15.

en the comment from the Supreme Court in *Feist, supra,* that "the quantum of originality [required] is minimal," the court finds that Hillsdale has met its burden on the issue of the design's originality.

b. Separability

 Copyright protection is not available for useful articles, defined by the Copyright Act as articles "having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. As the Act explains:

> [T]he design of a useful article ... shall be considered a pictorial, graphic, or sculptural work *only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from,* and are capable of existing independently of, the utilitarian aspects of the article.

*Id.* (emphasis added). In other words, if a useful article has aesthetic features that cannot be identified separately from the article, copyright protection is not available. *See Carol Barnhart,* 773 F.2d at 418.

 "Of the many fine lines that run through the Copyright Act, none is more troublesome than the line between protectable pictorial, graphic and sculptural works and unprotectable utilitarian elements of industrial design." *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.,* 170 F.Supp.2d 828, 832 (N.D.Ill.2001) (Easterbrook, J., sitting by designation) (quoting Paul Goldstein, 1 *Copyright: Principles, Law & Practice* § 2.5.3 at 99 (1989)). The "fine line" between the protectable and unprotectable is that of separability, an abstract concept describing the potential for a particular artistic work to be considered, either physically or conceptually, apart from its utilitarian aspects. *See id.*

The seminal Supreme Court case of *Mazer v. Stein,* 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954), illustrates this concept of separability. There, the Court considered whether a statuette of a dancer, when used as the base of a lamp, would no longer be entitled to copyright protection due to the utilitarian nature of the lamp itself. Reasoning that the statuette was not stripped of its identity as a work of art merely because it was incorporated into a useful item, the Court held that it could be copyrighted. *Id.,* 347 U.S. at 214, 74 S.Ct. at 468. The statuette was separable both because it could physically exist separately from the lamp and the lamp could function as a utilitarian item without it.

The holding in *Mazer* was later incorporated into the legislative history accompanying the passage of the Copyright Act, which further delineates the concept of separability:

> [T]he Committee is seeking to draw as clear a line as possible between copyrightable works of applied art and uncopyrightable works of industrial design. A two-dimensional painting, drawing, or graphic work is still capable of being identified as such when it is printed on or applied to utilitarian articles such as textile fabrics, wallpaper, containers, and the like. The same is true when a statute or carving is used to embellish an industrial product or, as in the *Mazer* case, is incorporated into a product without losing its ability to exist independently as a work of art.... [O]nly elements, if any, which can be identified separately from the useful article as such are copyrightable. And, even if the three-dimensional design contains some such element (for example, a carving on the back of a chair or a floral relief design on silver flatware), copyright protection would extend only to that element, and would not cover the over-all

configuration of the utilitarian article as such.

H. Rep. No. 94–1476, 94th Cong., 2d Sess. (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5668. As this report reveals with its reference to chair carvings and flatware designs, a copyrightable work need not be physically separable, like the lamp in *Mazer*. It may be embedded or fixed within a useful item and still be conceptually separable (although neither the flatware nor the chair, as useful articles, would be copyrightable).

■ Conceptual separability focuses not on "whether the features to be copyrighted could be sliced off for separate display, but whether one can conceive of this process." *Pivot Point*, 170 F.Supp.2d at 833. For example, in the case of *Kieselstein–Cord v. Accessories by Pearl, Inc.*, 632 F.2d 989 (2d Cir.1980), the Second Circuit determined that ornamental designs on belt buckles could be conceived apart from the utilitarian nature of the belt buckle and thus were copyrightable. 632 F.2d at 993. Similarly, Judge Mukasey found an intertwined banana leaf design to be copyrightable because it was conceptually separable from the lamp bases on which it appeared, observing that "it takes no great feat of ratiocination to separate the concept of the banana leaves from the concept of the lamps." *Sunset Lamp Corp. v. Alsy Corp.*, 698 F.Supp. 1146, 1151 (S.D.N.Y.1988).

The court finds that Professor Goldstein's conceptual separability test adopted by Judge Easterbrook in *Pivot Point, supra*, captures the requirements of conceptual separability as they apply to this case: a " 'sculptural feature incorporated in the design of a useful article is conceptually separable if it can stand on its own as a work of art traditionally conceived, and if the useful article in which it is embodied

would be equally useful without it.' " 170 F.Supp.2d at 833 (quoting Goldstein, § 2.5.3 at 2:67). Applying this test, Judge Easterbrook determined that a human mannequin head used by beauty school students to practice applying make-up and styling hair was not copyrightable because it would not be equally useful without its aesthetic features. *See id.* (noting that neck, eyes, and cheeks of mannequin were utilitarian as well as aesthetic features).

■ With these principles in mind, the court turns to the case at hand. At first glance,[10] it is apparent that the pieces of furniture comprising the Bordeaux Collection are useful articles; that is, they have "an intrinsic utilitarian function," 17 U.S.C. § 101, and are presumptively uncopyrightable. However, as discussed in Part II(B)(2) above, Hillsdale's certificates of registration do not extend to the entire Bordeaux Collection, but are limited to the decorative leaf patterns adorning the furniture.

Because the sculpted features of the Bordeaux Collection are embedded within the design of the furniture itself, however, the court must determine whether the sculpted features are sufficiently separable from the utilitarian aspects of the design to be copyrightable. *See Carol Barnhart*, 773 F.2d at 418. Applying the Goldstein/*Pivot Point* test described above, *see* 170 F.Supp.2d at 833, it appears that the items in the Bordeaux Collection would be equally useful even without their sculpted features. Remembering the standard of review discussed in Part II(B)(1) above, the court first looks to the "mute testimony" of the articles themselves. *See Carol Barnhart*, 773 F.2d at 414. The triple-leaf pattern in the back of the chair, baker's rack, and bar stool apparently has little to do with the structural integrity of those

10. See Attachment A.

items; it appears that it could easily be removed and the chair and baker's rack would remain functional. Similarly, the overlapping leaf pattern on the legs of the baker's rack and table also appears to be unrelated to the functionality of those items. In this regard, the Bordeaux Collection is much like the lamp in *Mazer*: the statuette of the dancer, while physically incorporated into the lamp, was not necessary for the lamp to fulfill its utilitarian function.

Again, remembering the standard of review discussed in Part II(B)(1) above, Collezione, as the party challenging the prima facie evidence of validity conferred by Hillsdale's certificate of registration, bears the burden of producing evidence weighing against validity. *See id.* The record contains no evidence of admissible quality that the items of the Bordeaux Collection would be less functional or useful if the sculpted leaf elements were removed. Because Collezione has produced nothing which calls into question this element of Hillsdale's presumptively valid copyright claim, the court must conclude that the Bordeaux Collection would be equally useful without the sculpted leaf features.

Even if the sculpted elements were considered to be "embedded" within the design of the Bordeaux Collection, they would be analogous to the carving on the back of a chair mentioned as an example in House Report No. 94–1476. Therefore, the court finds that Hillsdale's sculpted features within the Bordeaux Collection meet the second prong of the Goldstein/*Pivot Point* test.

The remaining element of Professor Goldstein's test, adopted in *Pivot Point,* is whether the sculpted features could stand on their own "as a work of art traditionally conceived," 170 F.Supp.2d at 833. Professor Goldstein's formulation of a "work of art traditionally conceived" is "broad" and without qualitative standards beyond the

Copyright Act's limitation to "pictorial, graphic and sculptural works." Goldstein, § 2.5.3 at 2:64 n. 101. As an example, Professor Goldstein observes that "[a] novelty slipper made to look like a bear's paw would be conceptually separable because a slipper would be equally useful without the bear's paw configuration and because *the bear's paw can stand alone as a—albeit modest—work of art.*" *Id.* (Emphasis added.)

Nevertheless, this consideration requires that the court evaluate to some basic degree the artistic qualities of the sculpted features. The court heartily agrees with Justice Holmes that "[i]t would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits." *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 251, 23 S.Ct. 298, 300, 47 L.Ed. 460 (1903). Respecting those narrow and obvious limits, the court notes that the sculpted elements of the Bordeaux Collection are at least as "artful" as the head mannequin examined in *Pivot Point,* which was held to satisfy this prong, or the bear's paw offered in Professor Goldstein's hypothetical. Moreover, it is not beyond the court's imagination to conceive of the sculpted leaves as a wall hanging or other decorative item. The court therefore finds that Hillsdale's sculpted leaf elements meet the first prong of the Goldstein/*Pivot Point* test.

### c. *Magnussen Furniture* Distinguished

Having found that Hillsdale's sculpted leaf elements satisfy both prongs of the Goldstein/*Pivot Point* test, the court stands poised to find that Hillsdale does indeed have valid copyrights in these elements. Before doing so, however, the court must consider Collezione's argument

that the Fourth Circuit's holding in *Magnussen Furniture, Inc. v. Collezione Europa, USA, Inc.*, 1997 WL 337465, 116 F.3d 472 (4th Cir.1997), operates to defeat Hillsdale's copyright claims. Notwithstanding the fact that *Magnussen Furniture* does "not constitut[e] precedent" in the Fourth Circuit, this court will consider it as persuasive authority. *Candle Factory, Inc. v. Trade Assoc. Group, Ltd.*, 23 Fed.Appx. 134, 138 (4th Cir.2001).

In *Magnussen Furniture*, the Fourth Circuit affirmed the district court's denial of Magnussen's request for injunctive relief on its copyright infringement claim, holding that Magnussen was unlikely to succeed on the merits. 1997 WL 337465 at *1, 116 F.3d 472. Magnussen had obtained copyright registrations on a line of iron tables, contending that the tables themselves were copyrightable sculptural works of art, on account of their pleasing shape and structure. *Id.* at *1–2, 116 F.3d 472. The *Magnussen Furniture* court held that the sculptural aspects of the tables were not conceptually separable from their utilitarian function, and that the tables therefore appeared to be "noncopyrightable useful articles." *Id.* at *3, 116 F.3d 472. In reaching this conclusion, the court considered whether the designer created the tables "merely for [their] expressive form" or as objects of utility, and concluded that the purpose was to design a utilitarian article. *Id.* The court also considered as a measure of conceptual separability whether there was " 'any substantial likelihood that even if the article had no utilitarian use it would still be marketable to some significant segment of the community simply because of its aesthetic qualities.' " *Id.* (quoting Nimmer on Copyright, § 2.08(B)).

Collezione argues that *Magnussen Furniture* requires that the court examine the intent of the designer of the sculpted leaves in the Bordeaux Collection and consider their marketability. The court declines to do so and makes no findings on those issues. This is because the court finds that *Magnussen Furniture*, which concerned the copyright of an entire article of furniture itself, is distinguishable from the current case, which concerns the copyright of sculptural elements embedded in articles of furniture.

In *Spectrum Creations, Inc. v. Catalina Lighting, Inc.*, 2001 WL 1910566 (W.D.Tex.2001), the court considered the applicability of *Magnussen Furniture* to the copyright. of a "graphic design in stained glass" embedded in a lampshade. The court concluded that *Magnussen Furniture* was distinguishable, reasoning that:

> Had the plaintiffs sought copyright of the lampshade design and form [instead of graphic designs on the lampshades], *Magnussen* and its holding would apply to preclude copyright validity. However, because the copyrighted design is one of "stained glass" and not the lampshade itself, the court's findings in *Magnussen* do not directly apply to the ... design at issue in this case.

*Id.* at *7, 116 F.3d 472. The *Spectrum Creations* court went on to hold that the graphic design at issue was conceptually separable from the lampshade on which it was embedded and therefore copyrightable. *Id.* at *10, 116 F.3d 472.

In this case, Hillsdale's copyright extends only to the sculpted leaf elements embedded in the Bordeaux Collection, as discussed in Part II(B)(2) above. If Hillsdale's copyrights were of the Bordeaux Collection furniture itself, the court would apply *Magnussen Furniture* to invalidate Hillsdale's copyrights. Because the scope of Hillsdale's copyrights is limited to identifiable sculpted elements embedded in the furniture, this court distinguishes *Magnussen Furniture* from the case at bar and declines to apply the designer's intent and marketability analyses described therein. The Goldstein/*Pivot Point* test remains the

basis of this court's conceptual separability analysis.

The court concludes that Hillsdale does indeed have a valid copyright in its Bordeaux Collection. Therefore, Hillsdale's motion for summary judgment on its counterclaim for copyright infringement will be granted. Collezione's motion for summary judgment will be denied.[11]

For the reasons previously stated,

IT IS ORDERED AND ADJUDGED that Plaintiff's Motion to Dismiss the Second and Third Counts of Defendant's Counterclaim [6] is granted.

IT IS FURTHER ORDERED that Plaintiff's Motion to Amend its Answer to Counterclaim [16] is denied.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [13] is granted as to the first count of the counterclaim.

IT IS FURTHER ORDERED that the parties may file such motions as they deem appropriate as a result of this grant of summary judgment.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment [27] is denied.

11. Collezione moves to amend its answer to Hillsdale's counterclaim to state an additional affirmative defense which rests on Collezione's contention that Hillsdale's copyrights in the Bordeaux Collection are invalid. Consistent with the court's finding that those copyrights are valid, the court will disallow Collezione's motion to amend its answer to Hillsdale's counterclaims.